**UNITED STATES of America,
Appellee,**

v.

**Clive Ulet McLEAN, Jr., Defendant–
Appellant.**

**Docket No. 00–1342.**

United States Court of Appeals,
Second Circuit.

Submitted: April 3, 2001.

Decided: March 28, 2002.

---

Barbara D. Cottrell, Assistant United States Attorney; Richard S. Hartunian, Assistant United States Attorney; Daniel J. French, United States Attorney, on the brief, United States Attorney's Office for the Northern District of New York, Albany, NY, for Appellee.

Patrick T. Burke, Burke, McGlinn & Miele, Suffern, NY, for Defendant–Appellant.

Before: OAKES, KEARSE, and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge.

Clive Ulet McLean, Jr. appeals from the sentence imposed by the United States District Court for the Northern District of New York (Lawrence E. Kahn, *Judge*) pursuant to a judgment of conviction entered upon his plea of guilty to one count of conspiracy to distribute marijuana, in violation of 21 U.S.C. § 846,[1] and three

---

**1.** Title 21, Section 846 of the United States Code provides: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense,

counts of possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1).[2] Although the indictment charged that the amount of marijuana involved in the conspiracy exceeded 100 kilograms, the District Court accepted McLean's plea despite his refusal to allocute to any drug quantity. The District Court subsequently sentenced McLean principally to a 63–month concurrent sentence on each of the four counts based on its own findings that the conspiracy McLean entered into involved more than 100 kilograms of marijuana. The 63–month concurrent sentence on each count exceeds by three months the statutory maximum applicable for an offense involving an unspecified quantity of marijuana. *See* 21 U.S.C. § 841(b)(1)(D).[3]

On appeal, McLean challenges only his sentence, contending that: (1) the District Court's findings with respect to the quantity of marijuana involved in the conspiracy were clearly erroneous; (2) the District Court erred in declining to apply a two-point deduction to his Base Offense Level for acceptance of responsibility; and (3) his sentence violates the teachings of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

We find no basis to disturb the findings of the District Court with respect to either the quantity of marijuana involved or McLean's acceptance of responsibility. With respect to McLean's *Apprendi* claim, we hold that, in these circumstances, it was plain error to impose a sentence on each count in excess of the statutory maximum authorized for a crime involving an unspecified amount of marijuana, but that, because the United States Sentencing Guidelines require the District Court to impose consecutive terms of imprisonment to the extent necessary to achieve the total punishment mandated by the Guidelines, the error did not affect McLean's substantial rights.

Accordingly, we affirm the judgment of the District Court.

## I. BACKGROUND

### A. *McLean's Guilty Plea*

On October 4, 1999, McLean pleaded guilty to all four counts of an indictment. The indictment charged McLean with one count of conspiring to possess with intent to distribute and to distribute marijuana in violation of 21 U.S.C. § 846, and with three counts of possessing with intent to distribute and distributing marijuana in violation of 21 U.S.C. § 841(a)(1). Count 1 of the indictment specified that "[t]he amount of marihuana involved in this conspiracy exceeds 100 kilograms." The remaining counts did not specify the quantity of drugs involved.

Although McLean sought to enter a guilty plea, he continued to contest the amount of marijuana charged in Count I of the indictment. Specifically, at his allocu-

---

the commission of which was the object of the attempt or conspiracy."

**2.** Title 21, Section 841(a)(1) of the United States Code provides, in relevant part: "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally ... to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

**3.** Title 21, Section 841(b)(1)(D) of the United States Code provides, in relevant part: "Except as otherwise provided in section 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:

. . .

In the case of less than 50 kilograms of marihuana, ... such person shall, except as provided in paragraphs (4) and (5) of this subsection, be sentenced to a term of imprisonment of not more than 5 years...."

tion, when the Court asked McLean how he pleaded to Counts I, II, III, and IV of his indictment, his counsel interjected:

> Before the entry of Mr. McLean's plea, I note that the final sentence in Count I is as follows: Quote, the amount of marijuana involved in this conspiracy exceeds 100 kilograms. With respect to the amount of marijuana alleged, the defendant contests the allegation of the Government as to the total quantity. However, he is prepared to plead guilty to Count I with that understanding. . . .

Tr. dated Oct. 4, 1999, at 15. In its response to the District Court's request that the prosecutor advise McLean of the relevant statutory penalties and sentencing guidelines in his case, the Government acknowledged that the issue of quantity would be resolved by the District Court:

> Your Honor, had the defendant—or with the defendant's conviction on Count I of the indictment, if the Court finds that the quantity of marijuana involved in the conspiracy exceeded 100 kilograms, then in that event, the defendant would face the penalties set forth in 21 United States Code, Section 841(b)(1)(B).

*Id.* at 22. Thus, it is clear that neither defense counsel nor the Government (nor, apparently, the District Court) understood McLean to have pleaded guilty to a crime involving any specific threshold drug quantity,[4] despite the fact that Count I of the indictment charged quantity with respect to the conspiracy. Nevertheless, the District Court—acting over eight months before *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), was decided—accepted McLean's plea.

The District Court's acceptance of the plea is not surprising, because, prior to *Apprendi*, this Court had held that, in cases involving violations of 21 U.S.C. § 841(a), "[w]hen an indictment does allege that a particular quantity is involved, the effect is only to put the defendant on notice that the enhanced penalty provisions of section 841(b) *may* apply." *United States v. Campuzano*, 905 F.2d 677, 679 (2d Cir.1990) (emphasis added), *overruled by United States v. Thomas*, 274 F.3d 655 (2d Cir. 2001) (*en banc*). In other words, prior to *Apprendi*, even when quantity was charged in an indictment, it remained a sentencing factor to be determined by the Court after a defendant's conviction.

## B. Sentencing Proceedings

The Presentence Investigation Report ("PSR") prepared by the United States Probation Office and circulated on October 12, 1999, recommended that the District Court hold McLean accountable for the distribution of 147.65 kilograms of marijuana and, thus, calculate his base offense level to be 26. The amount recommended by the Probation Office included the following: 7.057 kilograms seized from McLean at the time of his arrest on November 19, 1998; an estimated 108.64 kilograms based on the testimony of co-operating witness Michael DeLuca, who claimed to have received twenty pounds of marijuana monthly from McLean from November 1996 until November 1997; and 31.96 kilograms based on the testimony of Yvel Jean–Baptiste who, after being arrested in April 1998 for receiving a delivery of 7.49 kilograms of marijuana, told

---

**4.** "Threshold drug quantity" refers to the minimum drug quantity that triggers enhanced penalty provisions pursuant to 21 U.S.C. § 841(b). For example, the unauthorized distribution of an unspecified quantity of marijuana is punishable by the penalties set forth in 21 U.S.C. § 841(b)(1)(D), while the unauthorized distribution of 100 kilograms or more of marijuana is punishable by the penalties set forth in 21 U.S.C. § 841(b)(1)(B). Thus, 100 kilograms of marijuana is a threshold drug quantity triggering the enhanced penalty provisions of 21 U.S.C. § 841(b)(1)(B).

authorities that he had received four such shipments from McLean.

The PSR also recommended that McLean be denied a downward sentencing adjustment for acceptance of responsibility. In his interview with a probation officer after his arrest, McLean admitted that he sold DeLuca drugs on five to seven occasions between November and December 1997; however, he denied selling DeLuca the large quantities that DeLuca claimed. McLean also denied having marijuana continuously delivered to Jean–Baptiste's house, although he conceded that he was culpable for a single delivery to that location in April 1998. The probation officer concluded that "defendant has not admitted all the conduct that comprises the offenses of conviction and has denied additional relevant conduct for which he is accountable."

In March 2000, the District Court held a pre-sentencing hearing on the issue of relevant conduct, see generally *United States v. Fatico,* 579 F.2d 707 (2d Cir.1978), at which Andrew Zostant, the Government's investigator, and DeLuca testified. On direct examination, DeLuca testified that his relationship with McLean lasted from the fall of 1996 though the fall of 1997; that McLean was his main source of marijuana during that time; that he usually (but not always) purchased drugs from McLean in the back of McLean's clothing store on Central Avenue in Albany, New York; that he purchased marijuana from McLean between twenty and twenty-five times; that one of his first purchases from McLean was about a half-pound of marijuana, but that, about "midway" into their relationship, he began buying about twenty pounds each month from McLean; that he was arrested in May 1998 and agreed to cooperate with the Government; that, while wearing a wiretap, he met McLean on September 4, 1998, at which time McLean gave him a sample of marijuana and told him that he had just sold a 100–pound shipment; that, on November 18, 1998, he spoke to McLean by telephone and then met him in order to buy ten pounds of marijuana; that, at the same November 18 meeting, he arranged to buy five more pounds the following day; and that on November 19, 1998, McLean was arrested. All of this, DeLuca testified on cross-examination, approximated transactions for which he had no written records. DeLuca also testified that it was "possible" that he had not been in the store on Central Avenue until 1997.

As an exhibit at the relevant conduct hearing, the Government also submitted to the District Court the grand jury testimony of Yvel Jean–Baptiste. Before the grand jury, Jean–Baptiste had testified that, beginning around November 1997, McLean used Jean–Baptiste's apartment as an address at which to receive marijuana; that he gave his keys to McLean at least four times so that McLean could use his apartment; and that on April 27, 1998, he (Jean–Baptiste) was arrested when the police found a shipment of marijuana in his apartment, after which he entered into a cooperation agreement with the Government.

At sentencing, the District Court adopted the recommendations of the PSR regarding the quantities of drugs involved in McLean's crimes, except that the Court only attributed 7.49 kilograms (the amount actually seized) to McLean's dealings with Jean–Baptiste (as opposed to multiplying that amount by four based on Jean–Baptiste's testimony that McLean used Jean–Baptiste's apartment at least four times). The District Court thus held McLean accountable for 123.18 kilograms of marijuana and—based on a Sentencing Guidelines range of 63 to 78 months—sentenced him

principally to a term of imprisonment of 63 months.

On appeal, McLean launches a three-pronged attack on his sentence. First, he argues that the District Court erred in relying on DeLuca's testimony and, thus, in holding him responsible for more than 100 kilograms of marijuana. Second, he claims that the District Court erred in refusing to grant him a downward sentencing adjustment for acceptance of responsibility. Finally, he contends that his sentence is contrary to the teachings of *Apprendi.* We examine each of McLean's arguments in turn.

## II. DISCUSSION

### A. *Findings Regarding Drug Quantity*

■ As long as the sentence imposed is not greater than the maximum penalty authorized by statute for the offense charged and (in cases involving a guilty plea) allocuted to by the defendant, a district court may consider drug quantity in determining a defendant's relevant conduct for sentencing purposes pursuant to U.S.S.G. § 1B1.3(a), even if drug quantity has not been charged in the indictment as an element of the offense. *See United States v. Thomas,* 274 F.3d 655, 663–64 (2d Cir.2001) (*en banc*). "A district court's findings as to the quantity of narcotics involved in an offense are findings of fact subject to the clearly erroneous standard of review." *United States v. Prince,* 110 F.3d 921, 924 (2d Cir.1997). If, in the absence of a drug seizure, a district court must estimate the amount of drugs involved in a crime for sentencing purposes, that estimation "need be established only by a preponderance of the evidence." *Id.* at 925. In making that estimation, "a sentencing court may rely on any information it knows about," *id.* (internal quotation marks omitted), including evidence that would not be admissible at trial, U.S.S.G.

§ 6A1.3 (1998); *see United States v. Brinkworth,* 68 F.3d 633, 641 (2d Cir.1995), as long as it is relying on "specific evidence—*e.g.,* drug records, admissions or live testimony," *United States v. Shonubi,* 103 F.3d 1085, 1087 (2d Cir.1997). Moreover, "the district court may make credibility determinations which this Court will not disturb unless clearly erroneous." *Brinkworth,* 68 F.3d at 641.

■ In this case, the District Court's calculation of drug quantity was not clearly erroneous. The Court based its estimation of the amount of marijuana for which McLean was responsible on the amount of marijuana seized upon McLean's arrest, the amount of marijuana seized at Jean-Baptiste's apartment, and the testimony of DeLuca. Although McLean correctly points out that DeLuca's testimony was uncorroborated and that DeLuca was an admitted drug dealer eager to please the Government, these matters bear on DeLuca's credibility, which the District Court was free to determine for itself. *See id.* We give a district court's findings as to the credibility of witnesses "strong deference," *see United States v. John Doe # 1,* 272 F.3d 116, 123 (2d Cir.2001), and there is nothing in the record to suggest that the District Court's credibility determinations in this case were clearly erroneous.

### B. *Findings Regarding Acceptance of Responsibility*

■ Under the Sentencing Guidelines, a defendant qualifies for a two-level reduction in his Offense Level if he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a) (1998). "The sentencing judge is in a unique position to evaluate a defendants's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on

review," *id.* application note 5, and will "not be disturbed unless it is without foundation," *United States v. Defeo*, 36 F.3d 272, 277 (2d Cir.1994) (internal quotation marks omitted).

In the instant case, McLean admitted responsibility for selling marijuana to DeLuca on five to seven occasions between November and December 1997. He insisted, however, that each sale consisted of, at most, one to two pounds of drugs. McLean also admitted responsibility for the single shipment of marijuana to Jean–Baptiste for which the District Court ultimately held him responsible. In light of the District Court's findings concerning drug quantity (findings that are not clearly erroneous, *see* Part II.A, *ante*), however, the Court's determination that McLean had not clearly demonstrated acceptance of responsibility for his offense was not "without foundation" and, accordingly, should not be disturbed.

*United States v. Oliveras*, 905 F.2d 623 (2d Cir.1990), upon which McLean relies, is not to the contrary. The issue in *Oliveras* was whether section 3E1.1(a) of the Guidelines required a defendant to "accept responsibility" for crimes other than those to which he has pleaded guilty (or of which he has been found guilty) to qualify for a two-point reduction in his Offense Level. 905 F.2d at 626. We answered that question in the negative. *Id.* In this case, the District Court only considered whether McLean had accepted responsibility for the full scope of the conspiracy that formed the basis for Count I of the indictment, to which McLean pleaded guilty. *Oliveras*, therefore, is not relevant here.

### C.  *McLean's Apprendi claim*

We recently held, following the teachings of *Apprendi*, that drug quantity is an element of an offense charged under 21 U.S.C. § 841. *United States v. Thom-* *as*, 274 F.3d 655, 663 (2d Cir.2001) (*en banc*). Where, therefore, as here, a defendant is charged in an indictment with a § 841 offense involving a specific threshold quantity of drugs, *see* note 4, *ante*, and pleads guilty, but during a plea proceeding admits only the non-quantity elements of the offense and disputes quantity, the district court may accept the plea only on the lesser-included offense of the § 841 crime involving an *unspecified* drug quantity. *See* Fed.R.Crim.P. 11(f) ("Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."); *cf.* *United States v. Andrades*, 169 F.3d 131, 136 (2d Cir.1999) (stating that, to comply with Rule 11(f), a district court "must assure itself ... that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty" (quoting *United States v. Maher*, 108 F.3d 1513, 1524 (2d Cir.1997))). If a plea to that lesser-included offense is accepted by the district court, then it may not impose a sentence in excess of the maximum prescribed by 21 U.S.C. § 841(b) for an offense involving an unspecified quantity of the drug involved in the case. *See Thomas*, 274 F.3d at 663.

In this case, McLean admitted at his plea proceeding that he (1) conspired to possess with intent to distribute and to actually distribute marijuana, and (2) possessed with intent to distribute and actually distributed marijuana on three separate occasions. He affirmatively denied, however, that the quantity of marijuana involved in these offenses exceeded 100 kilograms. Accordingly, the only crimes for which the District Court could have accepted McLean's plea were the lesser-included offenses of conspiracy to possess with intent to distribute and to distribute

*an unspecified quantity* of marijuana and possession with intent to distribute and distributing *an unspecified quantity* of marijuana. Pursuant to 21 U.S.C. § 841(b)(1)(D), *see* note 3, *ante*, the maximum term of imprisonment for each of these offenses is 60 months.[5]

■■■ The District Court sentenced McLean to a term of imprisonment of 63 months—three more than the applicable statutory maximum—on each count, to be served concurrently, based on its own findings that McLean's offenses involved over 100 kilograms of marijuana. McLean now claims that his sentence violates the teachings of *Apprendi*. Because he did not object to his sentence on these grounds before the District Court, we review his claim for plain error pursuant to Rule 52(b) of the Federal Rules of Criminal Procedure. *See Thomas*, 274 F.3d at 666.

■■■ To obtain relief pursuant to Rule 52(b), McLean must show (1) error, (2) that is plain, and (3) that affects his substantial rights. *Id.* at 667; *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error

seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (quoting *Olano*, 507 U.S. at 732, 113 S.Ct. 1770) (internal quotation marks omitted) (alteration in original).

The Government concedes—as it must, *see Thomas*, 274 F.3d at 667–68—that McLean has established (1) an error (2) that is plain. It contends, however, that McLean cannot show (3) that the plain error affected his substantial rights. We agree.

■■■ An error affects substantial rights if "it is 'prejudicial' and it 'affected the outcome of the district court proceedings.'" *Thomas*, 274 F.3d at 668 (quoting *United States v. Gore*, 154 F.3d 34, 47 (2d Cir.1998)). Where, as here, the source of the alleged error is a supervening judicial decision that alters "a settled rule of law in the circuit," we apply a "modified plain error rule" in which the Government bears the burden of persuasion as to whether substantial rights have been affected. *United States v. Santiago*, 238 F.3d 213, 215 (2d Cir.), *cert. denied* 532 U.S. 1046, 121 S.Ct. 2016, 149 L.Ed.2d 1016 (2001); *see also, e.g., United States v. Monteleone*, 257 F.3d 210, 223 (2d Cir.2001).[6] In this

---

**5.** In his supplemental brief, McLean cited 21 U.S.C. § 841(b)(1)(D) as the provision providing the statutory maximum in his case. *See* Appellant's Supplemental Br. at 3. Accordingly, we have not considered whether 21 U.S.C. § 841(b)(4) provides the relevant statutory maximum where, as here, the indictment does not explicitly charge that the defendant distributed marijuana in exchange for remuneration. In any event, we note that the Government's proffer at the plea proceeding included a representation that the Government was prepared to prove at trial that on September 4, 1998, McLean received money from a Government informant in exchange for marijuana. Tr. dated Oct. 4, 1999, at 18.

**6.** In *Thomas*, the Government suggested that our "modified plain error" standard is inconsistent with (and, thus, was implicitly overruled by) the Supreme Court's decision in *Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997), but we had no need to address the standard's continuing vitality. *Thomas*, 274 F.3d at 668 n. 15. We also decline to address the issue of the continuing vitality of the "modified plain error" standard in this case, because, as discussed below, the Government prevails here even if it is held to the burden of showing that McLean did not suffer prejudice.

case, the Government contends that, even if the District Court had recognized that the five-year statutory maximum of 21 U.S.C. § 841(b)(1)(D) applied to each of the counts to which McLean pleaded guilty, the Court would have been required by section 5G1.2(d) of the Sentencing Guidelines to impose consecutive sentences, as necessary, to achieve the 63 month minimum term of imprisonment mandated by the Guidelines.

■ Section 5G1.2(d) of the Guidelines provides that, in imposing a sentence in a case involving multiple counts of conviction,

> [i]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment [arrived at through application of the Guidelines], then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.

In other words, "[i]n the case of multiple counts of conviction, [section 5G1.2(d) of] the sentencing guidelines instruct[s] that if the total punishment mandated by the guidelines exceeds the statutory maximum of the most serious offense of conviction, the district court *must* impose consecutive terms of imprisonment to the extent necessary to achieve the total punishment." *United States v. Angle,* 254 F.3d 514, 518 (4th Cir.2001) (*en banc*) (emphasis added), *cert. denied sub nom. Phifer v. United States,* —— U.S. ——, 122 S.Ct. 309, 151 L.Ed.2d 230 (2001). For example, "suppose a defendant is convicted of three offenses, each with a statutory maximum term of five years (60 months) imprison-

ment. If the district court determines that the appropriate sentence under the guidelines is 156 months, [section] 5G1.2(d) requires the imposition of consecutive terms on each count of conviction until the guideline punishment is achieved." *Id.*

In this case, McLean pleaded guilty to four offenses, each with a statutory maximum term of imprisonment of 60 months. The District Court determined that the appropriate sentence under the Guidelines was 63 months. Because 63 months exceeds the 60–month statutory maximum, a 63–month sentence could not be imposed on any of the four counts. In such circumstances, the Guidelines require that the total punishment, up to the statutory maximum, be imposed on each count, U.S.S.G. § 5G1.2(b), and that the sentence imposed on one or more of the other counts run consecutively "but only to the extent necessary to produce a combined sentence equal to the total punishment," *id.* § 5G1.2(d). Thus, for example, the 63 months of total punishment could have been accomplished by imposing sentences of 60 months on all four counts, running three of these sentences concurrently, and running three months of the sentence on the fourth count consecutively to the sentences on the other three counts. *See United States v. McLeod,* 251 F.3d 78, 83–84 (2d Cir.2001) Such a sentence would not have run afoul of *Apprendi,* because the sentence for any individual count would not have exceeded 60 months, and there is "no constitutionally cognizable right to concurrent, rather than consecutive, sentences." *United States v. White,* 240 F.3d 127, 135 (2d Cir.2001); *cf. Thomas,* 274 F.3d at 663–64 (noting that the fact that drug quantity is an element of an offense under 21 U.S.C. § 841 "does not preclude a district court from considering drug quantity in determining a defendant's

relevant conduct for sentencing purposes pursuant to U.S.S.G. § 1B1.3(a)").

■■ We hold that, under the circumstances presented here, the Government has met its burden of demonstrating that the plain error did not affect McLean's substantial rights.[7] In so holding, we join every other circuit that has considered whether an *Apprendi* error affects a defendant's substantial rights where, in the absence of the error, the application of section 5G1.2(d) of the Guidelines would have resulted in the same term of imprisonment. *See Angle,* 254 F.3d at 518–19; *United States v. Smith,* 240 F.3d 927, 930 (11th Cir.2001) *(per curiam); United States v. Sturgis,* 238 F.3d 956, 960–61 (8th Cir.), *cert. denied,* — U.S. —, 122 S.Ct. 182, 151 L.Ed.2d 127 (2001); *United States v. Page,* 232 F.3d 536, 544–45 (6th Cir. 2000), *cert. denied sub nom. Linton v. United States,* 532 U.S. 935, 121 S.Ct. 1389, 149 L.Ed.2d 312 (2001), *and Powers v. United States,* 532 U.S. 1023, 121 S.Ct. 1965, 149 L.Ed.2d 759 (2001), *and Hill v. United States,* 532 U.S. 1023, 121 S.Ct. 1965, 149 L.Ed.2d 759 (2001), *and Page v. United States,* 532 U.S. 1056, 121 S.Ct. 2202, 149 L.Ed.2d 1032 (2001);[8] *cf. United States v. Rivera,* 282 F.3d 74 (2d Cir.2000) *(per curiam)* (holding that an *Apprendi* error was harmless where the defendant received a concurrent sentence on another count longer than the "statutory maximum" applicable to the count affected by the error).

### III. CONCLUSION

In sum, we hold that:

(1) As long as the sentence imposed is not greater than the maximum penalty authorized by statute for the offense charged and (in cases involving a guilty plea) allocuted to by the defendant, a district court may consider drug quantity in determining a defendant's relevant conduct for sentencing purposes pursuant to U.S.S.G. § 1B1.3(a), even if drug quantity has not been charged in the indictment as an element of the offense;

(2) The District Court's findings with respect to the quantity of marijuana involved in the conspiracy of which McLean was a member were not clearly erroneous;

(3) The District Court's determination that McLean had not clearly demonstrated acceptance of responsibility for his offense was not "without foundation" and, therefore, will not be disturbed; and

(4) Although the District Court committed plain error in sentencing McLean to a 63 month term of imprisonment for each of his four offenses of conviction to be served concurrently, the plain error did not affect McLean's substantial rights because, absent the error, the application of section 5G1.2(d) of the Sentencing Guidelines would have resulted in an identical total term of imprisonment.

---

**7.** Our holding here would not preclude reformation of McLean's sentence on *Apprendi* grounds in the event of a successful collateral attack on some of McLean's convictions. A court granting a writ pursuant to 28 U.S.C. § 2255 has broad discretion to fashion a remedy appropriate under the circumstances. *See United States v. Gordon,* 156 F.3d 376, 381 (2d Cir.1998) *(per curiam); cf. Boria v.*

*Keane,* 99 F.3d 492, 498 (2d Cir.1996) (affirming the District Court's choice of remedy in a 28 U.S.C. § 2254 habeas case).

**8.** The Supreme Court denied *certiorari* with respect to each of the four defendants in *United States v. Page,* 232 F.3d 536 (6th Cir.2000) in separate orders.